Case No. 216024, Tennessee State Conference of the NAACP et al. v. Tre Hargett et al. Oral argument to be 15 minutes for the appellant and 15 minutes to be shared by the appellees. Mr. Cloutier for the appellant. Good morning, Your Honors, and may it please the Court, Matt Cloutier on behalf of the State of Tennessee. With the Court's permission, I'll be reserving three minutes for rebuttal. Very well. Okay, so you're doing all the argument on this side? Correct, Your Honor. Okay, go ahead. All right. Plaintiffs in this case sought to permanently enjoin a newly enacted Tennessee law and to have that law declared unconstitutional. All those plaintiffs got, though, was a short-lived preliminary injunction that preserved the status quo for seven months until the law was voluntarily... It wasn't a status quo injunction. It was a likelihood of success injunction, correct? Yes, Your Honor. It was based on... That's a big difference. It is in terms of the assessment of the merits, but not in terms of the practical effect of the injunction. It preserved the status quo by preventing the law from going into effect. And the practical effect was that the voter registration people did not have to get this mandated training, and there were people registered to vote, presumably, as a result of that. Would you agree with that? Certainly, Your Honor. And that occurred before the legislature had enacted any legislation to change the law, correct? That is correct, Your Honor. Okay. So why isn't that a benefit that we could take into account in determining that they're a prevailing party? Sure. So, you know, I think the basic reason here is that that's not the way that this court has defined enduring relief in the past. Well, I mean, why is that any different from, you know, that Kim Worthy marriage case, you know? I mean, to some extent, people got registered, which, in the plaintiff's view, would not have been registered, as Judge Bush suggests. They got that relief as a result of this order, and it's enduring. Nobody can take away their registration. So, at best for you, why is this, you know, at least a hybrid of cases where, as a result of the court order, you have enduring relief, and then as a result of, you know, voluntary action, you have some other, you know, benefits that the plaintiffs want? Why isn't it at least a hybrid? I think because those people who may or may not have registered to vote weren't plaintiffs, Your Honor. I think that's the main distinction between this case and Miller. In Miller, you had individual plaintiffs who sought the ability to get marriage licenses. These plaintiffs want people to get registered, right? These are not individual voters. Correct, Your Honor. So, I mean, I don't know. That seems they want to have people registered, and they got a bunch of people registered. That seems to be a benefit to these plaintiffs. And I think, you know, it might be a different scenario if they had said, for instance, you know, let's say we want to register 1,000 people to vote in this election, and the preliminary injunction gave them that. I think that's a closer case to Miller. I think what's tricky about this one is that, you know, again, the plaintiffs weren't the ones who wanted to register to vote. So, unlike in Miller where you had plaintiffs. But they didn't want to have to do this training, did they? They didn't, Your Honor. They didn't have to do that, did they? They didn't. But, again, I think. Isn't that a benefit to the plaintiffs? It is a benefit. But it's not an enduring one in the way that this court defined it in Miller. This whole plaintiff-voter distinction might not be your best argument, you know, for your time here. Sure. Sure, Your Honor. Then I think, you know, I think our fallback is that the way this court defined enduring relief in Miller is relief that, you know, is irrevocable and gives the plaintiffs everything they want. So, to some extent, I don't think I can fully step away from that distinction between the voters and the plaintiffs.  But, you know, why isn't there a the other side gave up exception to the requirement that the enduring relief be the result of a court order? All right? So they got relief that was there as long as the state was contesting the issue. But then the state, for whatever reason, seven months after enacting a statute, they repeal it. Highly unusual. Coincidence? Whatever. That's not what we're here to figure out. But if the party that if the defendant in one of these cases basically just chooses to give up rather than keep generating fees, why should that vaporize the other side's entitlement to fees in the idea that, you know, it's not enduring? I think for two reasons, Your Honor. I think the first is that that wouldn't be, you know, reconcilable with what this court did in McQueary where it was the exact same scenario. I don't think so. What the court does in McQueary at the end of the day is they reverse an order denying fees and remand for a new determination. That is by no means some bright line about you can't grant fees based on a preliminary injunction. I certainly agree with that, Your Honor. And we're not asking this court to create a bright line rule or to apply one because, again, I think this court was right. There just aren't any. Exactly. And we think that's the right call, and I think that's what McQueary says pretty unequivocally. But I think what McQueary also says is that ultimately it is a contextual and case-specific inquiry, and our position is that where the context and case-specific facts are the same, the result has to be too because I think any other scenario isn't really a standard at all. It's, you know, entirely up to the district court's discretion and is ultimately whim. So what case are you thinking of when you say, you know, the context and the case facts are materially the same to the ones here? I think I would point to the ultimate denial of fees in McQueary, which, of course, I recognize. That didn't come to this court, right? It did, Your Honor. Oh, okay. This court ultimately upheld the denial of fees in McQueary. And I'll – Because it was not an abuse of discretion. It was under a different standard of review, Your Honor, but I think, you know, again, the facts are essentially identical. It was an unpublished opinion that second time, wasn't it? That's absolutely right, Your Honor, but as we pointed out in our brief, this court does routinely look to unpublished decisions. Believe me, we understand all that. Sure, sure. Well, I mean, I guess what sort of makes me a little restless about the state's argument in this case is its fictive quality. I mean, we have, you know, the plaintiff springs suit promptly in response to this act. They get a district court to say they have a high likelihood of success on their claims. Seven months later, the state beats a retreat and basically gives up. And the plaintiffs to this day, ever since the district court entered their order, the PI, the plaintiffs have had, in fact, all of the relief they asked for. For the first seven months, it was the direct result of a judicial order. Since then, it's not been the direct result, maybe the indirect result, but, you know, their relief has been enduring. You would say, okay, but now it has a different immediate cause. But it's enduring relief, and they got, you know, everything they wanted. And, I mean, the idea that, like, it's a coincidence or something that the state repeals it, and, ergo, they don't get any fees at all for bringing basically all likelihood. The district court basically found as much. For causing all of this to happen, they get nothing because the state gave up rather than fight to the end in a preliminary injunction that the district court had already said you're probably going to lose. That's right. Why does that make sense? You know, I think we recognize that that's, I think, an unfortunate outcome for the plaintiffs. But the reality is that this court in McQueary said that a preliminary injunction alone will rarely confer prevailing. I don't think they said, he didn't say rarely. I believe he did, Your Honor. I believe generally or tending. And wasn't it also earlier in the, I think the court there was talking about the state put injunctions, which didn't really go to the merits. And that was the point that you could, there could be a judge out there who gives an injunction just based on the balance of harms without getting to the merits. And so that's the point. Yeah, not every preliminary injunction is going to give you a basis for attorney's fees. But that doesn't mean that it couldn't. The right circumstances were presented. Right, Your Honor. But I think, again, to return to McQueary's, you know, call it a general rule against prevailing party status for PIs. Call it a statement that it's rarely sufficient. Either way, I think the general rule is that that's not going to be the norm. And the court specifically said, and I quote, that there are only occasional exceptions to this general rule. Well, I mean, the scenario I outlined, why isn't that a pretty good exception? I think because, you know, A, like I said before, it can't really be reconciled with McQueary. I think if plaintiffs... McQueary is a, it doesn't give you this kind of bright line. No, unpublished opinion, okay. I mean... And we agree that it's not a bright line. But, again, I think, of course, this is contextual and case-specific. But I think it helps to think of this Court's prevailing party cases on a spectrum. So if you have McQueary on one end, where seven months in a preliminary injunction isn't enough to confer prevailing party status, or, I apologize, six months, and then you have, let's say, Miller on the other end, where the preliminary injunction, I think, absolutely gave the plaintiffs everything they wanted, the Court pointed out and said that there was no further relief they could get from the Court. And then I think this Court's task today is to find out where in that mix this case falls. And I think it has to fall closer to McQueary, given the factual similarities. Do you know whether in McQueary the plaintiff actually attended any funerals relying on that preliminary injunction? I don't believe that was in the record. But I also think that the Court, if I recall correctly, said that that wasn't necessarily the relevant factor. And I think when this Court talked about the parade hypothetical in McQueary in Miller, it said that it wouldn't make a difference whether the plaintiff attended the parade, or I think they specifically said whether he went to a brunch instead. The point is that he got the opportunity to do so. So, you know, I think, again, if this Court has to place this case on a spectrum, I think it has to be closer to McQueary. And I think to just give a broader – It's like the parade case. Why isn't it like the parade case? Yeah, that McQueary was talking about. I think the difference there is that that case, this Court said in McQueary, would be one where the plaintiff's claims are mooted by court-ordered success and the passage of time. And that isn't what happened here. I think, as Judge Kethledge pointed out, the plaintiff's claims here were mooted by legislative action. And I think – Like I said, though, some of this was mooted by the passage of time in the sense that these folks already got registered. I think that – I think to some extent it sure looks like a hybrid situation. I think that's – I think Judge Nalbandian has been trying to ask a question. Do you have something? I'm just curious about DeWine. Where does that fit in that? I think that would have to be – I mean, there was only preliminary relief. I mean, it was – is it just a matter of 12 years is enduring? I mean, at some point preliminary is enough. I think that's essentially what this Court said in Planned Parenthood. But I do think the 12-year distinction is an important one because I think, as this Court said, in Planned Parenthood itself as well as in McQueary, the relevant comparator when conducting the prevailing party analysis is what the plaintiffs requested. So 12 years is obviously closer to permanent than a seven-month injunction would be. But I think the other distinction between Planned Parenthood in this case is that one did not stem from a legislative change. It was the actions of the FDA, which was an entirely independent third party. So in that sense, I do think that case is a little closer to the Breed hypothetical because you have a definite duration that isn't dictated by the parties at all. Well, that seems odd because in some sense there's a more direct link in a case like this one between what the plaintiffs did and what happened as opposed to the happenstance situation. I don't know. It's just a bizarre – I guess it's just a bizarre result of the rejection of the catalyst theory. That's my understanding, Your Honor, and I think that is an important distinction. I think, counterintuitive or not, the Supreme Court has rejected voluntary changes as a basis for prevailing party status. And I think this Court said the same thing. What case are you thinking about there? Buckhannon, Your Honor, and I agree that there are – Buckhannon – well, I mean, geez, all they did was file the complaint in that case, right? That's true, Your Honor, and I see my time has expired. May I respond? Yeah, I mean, so why is that really a factually – factual context, text, et cetera? Why isn't that awfully far removed from here? I do think it's distinguishable. I think I would characterize Buckhannon as, you know, a pure catalyst theory case where it's simply the filing of the suit that – Yeah, mere suggestion, sort of. Right, but I do think that, as we pointed out in our brief, there are similarities, I think problematic similarities, between the catalyst theory and the district court's reasoning in this case. I think no matter how you look at it, either way the district court is giving plaintiffs credit for a defendant's voluntary change. And I think that's difficult to square with Buckhannon and also with this Court's articulation of the prevailing party standard in Miller. Okay. Well, thank you for your answers. We appreciate them. You'll have your rebuttal, and we'll hear from somebody on the plaintiff's side. Good morning, Your Honors. Davin Rossborough for the League of Women Voters Plaintiffs. Okay. And may it please the Court. Are you dividing by substance or just by your respective cases or something? Just by time, Your Honor. I'll try to – it's a bit of a difficult divide based on substance. So my colleague, Mr. Chowdhury, will address any points that I've not had time to address that the Court would like to discuss. Okay. Very well. Thank you. Thank you. This Court has held that a party should receive fees based on a preliminary injunction when three conditions are met. First, there must be a material alteration in the relationship between the parties, meaning substantive relief on a significant issue in the case. What is your answer – I mean, this case just looks like McQueary on the facts. The same – just basically the same thing happened. There was a denial of fees. Is it just kind of this – you know, the second case was unpublished. There's a standard of review issue. I mean, is that the distinction, or is there, like, any meaningful kind of legal distinction? I think those two points are important, Your Honor, but I think there is an additional distinction here. And it pairs with the standard of review that was applied at the time, which this Court has since clarified in Miller. Part of the district court's rationale in McQueary 2 that then this Court affirmed in the unpublished order under clear error review was that the plaintiffs in that case had sought a permanent injunction as well but only received a preliminary injunction. Later, in Miller v. Cottle, this Court clarified that that's not a basis to deny prevailing party status. So there was a clarification later on. That same argument was pressed in Miller, and this Court said, that's really a matter of – it's not really a matter of substance. And this Court specifically addressed that point. So I think that the clarifications this Court has made in Miller and in Planned Parenthood of southwestern Ohio cases undermine any remaining rationale there. And what we were left with in that case was clear error review, and this Court really looked at McQueary 1 and said, well, we've set out a bucket of cases in which probably the plaintiffs should almost always get when it was – you know, the Court was saying there's this bucket of cases where we should consider, well, maybe prevailing party status should always come from a preliminary injunction but not because of this reason. And one of the reasons why they said, well, there sometimes should be at least is a certain bucket where just the passage of time moots the case. And I think what this Court said was, well, this isn't in that bucket, so we're going to just defer it to the District Court. But the District Court's rationale, I think, has been undermined by later decisions of this Court. But McQueary – I mean, McQueary – help me out. I don't have it in front of me. The McQueary 2, apart from this standard of review, do they rely on this permanent injunction argument? The District Court's decision did rely on it. What did we say? What was the gist of it? I apologize. I don't have it in front of me. Frankly, this Court said very little. It basically said, well, this is a matter of the District Court having a ringside view of the facts. We're applying clear error review. And in light of – we sort of set this broad standard in McQueary, and we can't really say that this is clear error as it doesn't really fall under any of the either extreme buckets. All right. Very well. But I don't understand. I guess I'm – so McQueary is really factually the most similar case, and it really has this specter of kind of catalyst theory, this case and McQueary. Okay, you may disagree, but anyway, go. Then we have the marriage license. We have Miller. We have DeWine, both of which just look different. I understand that maybe they're – Miller looks like a case that McQueary would have said, yes, that's one of the exceptions because you're going to have something happen. It happens. That's it. DeWine, I don't know, the Planned Parenthood case, I'm not sure what to make of it. It just looks kind of sui generis, this 12-month – I've never heard of a 12-month preliminary injunction. 12 years. 12 years. I'm sorry. I've heard of 12 months. So I don't know why do they – I don't know where the undermining of McQueary is. If I go back and say – the one thing I know is we don't have – this catalyst theory doesn't work, and for better or worse, I mean, that's – I think there's something to be said for it. But look, the Supreme Court said no, so I don't know how those later cases – I'm not sure how to reconcile those. I don't know why we wouldn't just go back to McQueary and say, well, the one thing I know is this one didn't work. Right, and I think the reason is, Your Honor, the DeWine case has really fully undermined all of the legal arguments that the appellants are making here. The only distinction that they're able to make with Planned Parenthood in this case, true distinction, is the length of the preliminary injunction. But in other ways, the success that we achieved on the merits here was far stronger than Planned Parenthood. In that case, they brought four claims. They only prevailed on one claim. This was about the RU486 pill, and they only prevailed on the claim that was about the life or health of a mother through a certain period. And then the court clarified that the preliminary injunction was as applied only to those implicated cases. And so by contrast here, we obtained – we prevailed – the court found not only a likelihood, but a strong likelihood of success on every single claim we brought, challenging every single provision of the law. And as the district court found, which had the ringside view of the facts here, this enabled us to – our clients to register voters in the key months leading up to the 2020 elections. And that's – and, you know, that's endured. And when we go back to the term enduring, that first is cited from this court in Macquarie 1, and they're citing Sol V. Weiner. And what Sol – where that comes from is they're talking about relief that's not undone by a later decision in the case. It's not talking about a court order needing to endure for all time. If that were the case, then, of course, fees would never be available for a preliminary injunction. And so, you know, that's precisely what we're looking at here. This is just a factual question that's not loaded in any way. Was the injunction ever vacated as a result of the repeal? It was not, Your Honor. And I think this is, again, similar. The court in DeWine – this court in DeWine made that same point. This court, when we – the case was dismissed, it was noted that the preliminary injunction was never vacated and the dismissal order did not vacate it. The defendants never sought vacatur. So that preliminary injunction remains in effect for all intents and purposes to this day. I mean, really? It's, like, still in effect? Well, I guess I'd have to read the terms. Right. There were no terms of the – the parties submitted a joint motion for voluntary dismissal of the case. So the case has been – The case has been dismissed, Your Honor. Presumably is tied to the dependency of the case, like most people. Presumably. Sometimes, obviously, there's the court on its own, or parties will seek, as you know, there's months in where vacatur and other types of vacatur, and that was never sought in this case. I see my time is remaining – is wrapping up, but I will turn things over to my colleague, Ms. Chowdhury. Thank you, Your Honors. Good morning, Your Honors. I'm here to pick up on Mr. Rossborough's argument. My name is Pooja Chowdhury. I represent the Tennessee NAACP plaintiffs. Your Honors, I believe Mr. Rossborough has made all of the important points. I reiterate the following. Under the controlling law of the circuit, which is Miller and Planned Parenthood, we are clearly the prevailing parties. There was a court order, and that – I mean, is the query not the controlling law? I mean, your friend said that it had been undermined. I mean, it's a published decision of this circuit, and it's also the first one in time, so it's the one that we would default to. You would agree, right? So you can't be undermined by a later published decision. So I'm not sure what – I still go back to the guardrails that the query sets out. I mean, generally, this is not going to be available, and I don't know – and this case doesn't seem to fall within the exceptions that it laid out. So I'm confused as to where to go on that. Yes, your Honor. So McQueary 1, again, you're correct that it stands for the proposition that, generally, on preliminary injunctions, 1 does not receive fees. However, it does not create a bright-line rule, as my colleague said, as to whether preliminary injunctions always or never warrant fees. That's all McQueary 1 stands for. Later, Planned Parenthood and Miller are in line with McQueary 1. In fact, they cite to the first decision and note that – Well, yeah, because McQueary 1 says – I mean, it's more than just saying there's no bright-line rule. It says, hey, look, you know, for example, if you have some event that's coming up and it happens, that's an exception, which that seems to me is what Miller is about. And then in Planned Parenthood, the court goes to great lengths to say, hey, look, it's been 12 years. That seems enduring to us, and so it's not really an exception. It's almost like they were just saying we're going to read the word enduring to mean 12 years, even if it's a PI. So I don't – I still – so then I go back to McQueary. How does this case fit into one of those exceptions? I mean, accepting that we don't have the catalyst rule. Well, two points, Your Honor. One, you raise the occurrence of an event, and two, you raise the issue of the time that the injunction was in place. With respect to the event, plaintiffs made clear in their complaint as well as their preliminary injunctions that they sought to hold voter registration drives in advance of an extremely important presidential election year, in advance of the primary election and the general election. Factually, it takes months in many cases to organize a voter registration drive, and so plaintiffs submitted affidavits to the district court that showed that they were rolling out text campaigns, that they were – that they had planned to apply for grant funding in order to carry out their core missions. And so as for the event, here the event clearly was the 2020 primary and the general elections for which plaintiffs received a seven-and-a-half to eight-month injunction during which they were able to register voters. And to go back to Miller, Your Honor, Miller does not necessarily say that you need an event to occur. Rather, in Miller, the court specifically said that plaintiffs didn't seek relief specific to a time and a place, but that's a distinction without a difference because plaintiffs needed only the opportunity to obtain marriage licenses because Kentucky left the rest – But that's what moots it out, right? I said you want something or whatever, and then it happens, or you had the opportunity to have it happen, and then that's what moots the case, right? Your case wasn't mooted after the voter registration drive for the 2020 general election, right? It wasn't mooted. It wasn't mooted. It was still going because the relief you wanted was to get the law struck down, and you got the relief. It's just the legislature gave you the relief, not the court. And, again, that is of no moment, the fact that the legislature acted to repeal the law. Rather, courts in this circuit – So it's irrelevant? Yes, yes. The fact that the legislature repealed the law is irrelevant in this case. The only relevance it has is that it dismissed the case. That's the relevance. The issue here is the order itself and the relief that plaintiffs received as a result of the order. And so whatever the legislature did later is not a basis for denying fees, and the Fifth – and the – apologies, Your Honor – the Sixth Circuit has helped that, and other circuits have also followed that. For example – Okay, but if the order terminates with the litigation, which most preliminary injunctions do or would, then why, under the theory you just laid out, the conception of this, where we just look at what's happening in the court, why isn't the relief not enduring as a result? I'm sorry, can you – You say, forget about the legislature, we have an order and a dismissal. The relief must be enduring. The order does not endure the dismissal. And so why, under the conception that you just gave us, why is the relief, why isn't it not enduring? Well, the relief is enduring, Your Honor, because as you pointed out in response to my colleague, people were registered to vote, that cannot be undone. Some enduring relief, but not as to future cycles, which is presumably part of what you wanted. And so why wouldn't that only sort of get you in this hybrid situation where maybe, you know, you get a piece of the fees? Well, you know, your prevailing party may be to a lesser extent than the district court thought. Why isn't that the result? Well, because Miller and Planned Parenthood addressed that issue. But you have to – I mean, really, Planned Parenthood, we're talking 12 years. A difference in degree that basically is a difference in kind. But the part of those decisions that I was citing to was the portions of those decisions where the court, the Sixth Circuit explicitly says that plaintiffs need not obtain all of the relief that's sought in the complaint. Other claims that, you know, you lose on this one, but you won on this one? Well, that was Planned Parenthood. And in Miller, the plaintiffs sought a permanent injunction. They also sought damages, and they did not receive it because the Kentucky legislature repealed the law. The court says that – and I will – Why don't you take 30 seconds to wind up, just because your red light's on. If other judges have questions, they can ask them. But otherwise, I think we need to let the state have it. Sure. I'll just give you this quote. Miller says, a win is a win, regardless of whether the winner runs up the score. So I believe that that case controls. Thank you, Your Honor. Thank you. Hear from the state. Thank you, Your Honor. Just three very brief points on rebuttal, two sort of corrections, and then one broader point. So first, I think both of my friends on the other side have referred to Miller. And I think the one in particular said that, you know, in Miller, the court rejected this sort of preliminary permanent distinction as a basis for prevailing party status. But I think, you know, that's just wrong. I think this court in Miller said that that was a distinction without a difference, particularly because it was talking about marriage licenses, which the court said, and I quote, are essentially a one-time thing. I think, you know, that really can't be – So it's an event scenario. Exactly, Your Honor. It was exactly like the parade hypothetical in McQueary. I think this court in Miller specifically pointed to that to support that one-time thing point. The second point I wanted to make is that my friends on the other side have also said that this court in McQueary, too, didn't say much. And I think that's true. But what it did say was important. I think this court highlighted the district court's conclusions, two conclusions in particular. The first is that the repeal did not serve as a basis for fees. The court cited to the district court's opinion as well as Buckhannon. And then the second is that plaintiff's claim did not become moot because the preliminary injunction granted him all of the relief he sought. Instead, the court pointed out that the relief he sought was permanent and what he got was temporary. And I think those two points here, you know, apply with equal force and confirm that these plaintiffs are not prevailing parties based on this court's reasoning in both of its McQueary decisions. And the final point is just sort of a practical consequence point. Again, this court in McQueary said, and I quote, that when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under Section 1988. This court, of course, recognized that there are occasional exceptions to this rule. But if the preliminary injunction here is enough to confer prevailing party status, those occasional exceptions I think have swallowed the rule. In other words, if plaintiffs are prevailing parties based on a short-lived preliminary injunction mooted by voluntary legislative change, it's difficult to conceive of a scenario where a preliminary injunction alone will not confer prevailing party status. I don't know about that. I mean, well, I don't know. I mean, you know, it just depends. If defendants back down because the district court has said what you did was likely unconstitutional, I don't know, is it so terrible that we would say, okay, well, you know, then that counts as prevailing party? You know, I don't know that it's terrible in the abstract,  and I think that's ultimate. That's your best. I mean, I understand. Would you agree that we are an outlier circuit? I do think that's right, specifically when it comes to how this court frames enduring relief. I think that is a bit of an outlier in terms of the other circuits. The other ones are a little more latitudinarian and sort of let this, you know, more liberal with fees. Generally speaking, that's right. Though I will note that the Fifth Circuit in its decision in Dearmore said that the circuit's approaches are anything but uniform. So, you know, I don't know that we're necessarily an outlier against a unanimous consent among the other circuits. Right. And I see my time has run, but if I can make one final point. Please. You know, I think plaintiffs in this case are essentially asking this court to turn McQueary's general presumption against fees for preliminary injunctions on its head, and, you know, we'd ask that this court reject that invitation and reverse the district court's award of the fees here. Thank you. Okay. We appreciate your straight answers on both sides. All right. The case will be submitted.